UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED

00 SEP 22 PM 1:58

U.S. DISTRICT COURT
N.D. OF ALABAMA

DOBBS TEMPORARY SERVICES, INC. )
d/b/a PRO STAFF PERSONNEL SERVICES,)
                                   )
    Plaintiff/Conterclaim          )
    Defendant,                     )
                                   )
vs.                                )Civil Action No. CV-00-S-1739-S
                                   )
CHARLES "CHASE" MORROW; MONICA     )
GRAVES; VINCENT BRIAN PITTS and    )
ITAC SOLUTIONS, LLC,               )
                                   )        ENTERED
    Defendants/Counterclaimants.   )
                                   )        SEP 2 2 2000
vs.                                )
                                   )
MICHAEL STOCKARD                   )
                                   )
    Third Party Defendant          )

MEMORANDUM OPINION

This action is before the court on plaintiff's motion for
preliminary injunctive relief.  Plaintiff asks this court to enjoin
defendants from soliciting plaintiff's customers and/or staffing
candidates, and, from using or disclosing confidential information
acquired by defendants during their employment by plaintiff.  Such
requests are based upon confidentiality, non-compete, and non-
solicitation covenants contained in employment agreements signed by
defendants.  Following consideration of the pleadings, evidence
produced during hearings held August 30 and 31, 2000, and the
arguments and briefs of counsel, the court finds that plaintiff's



motion is due to be granted in part, and denied in part.

## I. BACKGROUND

Plaintiff, Dobbs Temporary Services, Inc., doing business as Pro Staff Personnel Services ("Pro Staff"), is a Minnesota corporation engaged in the placement of temporary and permanent employees with companies in need of the services of such persons.[1] In the Birmingham market, Pro Staff is comprised of three divisions: 1) office administration placement; 2) accounting placement; and, 3) information technology placement. Each division works with two categories of clients, applicant clients and company clients.

Applicant clients are potential employees seeking permanent or temporary placement with an employer. They generally come to Pro Staff through referrals, but also are recruited on the Internet, at job fairs, and through newspaper advertisements. Applicant clients are managed by Pro Staff "staffing managers." Before becoming part of Pro Staff's applicant field, an applicant client fills out an application and job history, is tested on relevant job skills, and is personally interviewed by Pro Staff employees. Once an applicant is accepted into the applicant field, the applicant's

---

[1]Motion for Preliminary Injunction and Verified Complaint ("Complaint") ¶ 1.

information is entered into "Pro Search," a computerized database that matches the applicant's skills and interests with the staffing needs of company clients.

Company clients are the business entities with which Pro Staff places the applicant clients.  Relationships with company clients are developed by "account managers" and "branch managers."  These managers use various methods to develop relationships with company clients, including initiating contact through telephone calls and personal visits.  Pro Staff makes its profit by charging company clients a percentage above the pay rate of applicant clients.  Branch managers, account managers, and staffing managers receive a commission when they successfully place an applicant client with a company client.

Defendants Chase Morrow ("Morrow"), Brian Pitts ("Pitts"), and Monica Donahue, formerly known as Graves ("Graves"), are former Pro Staff employees who now work for defendant ITAC Solutions, L.L.C. ("ITAC").  Morrow worked for Pro Staff from June 1, 1998 until March 1, 2000.[2]  On the date he departed Pro Staff, Morrow was the branch manager for Pro Staff's information technology division.[3]  Morrow had one year of prior staffing experience at Scan-Optics,

---

[2]*Id.* ¶ 8.

[3]*Id.*

3

one of Pro Staff's company clients, when Pro Staff hired him.[4]

Pitts worked for Pro Staff from June 1, 1996 until May 1, 2000.[5]  His last position at Pro Staff was branch manager of the accounting division.[6]  Pitts had never worked in the staffing industry prior to his employment by Pro Staff.[7]

Graves worked for Pro Staff from May 6, 1998 until April 21, 2000, and was the staffing manager for the information technology division when she left Pro Staff.[8]  Graves gained experience in the staffing industry at Viatech prior to her employment relationship with Pro Staff.

Each defendant signed an employment agreement when he or she began working for Pro Staff.  Morrow and Graves signed confidentiality and non-compete agreements,[9] while Pitts signed a confidentiality and non-solicitation agreement.[10]  Each agreement contains a choice-of-law clause and a clause stipulating to irreparable harm.

The confidentiality clause contained in all three agreements

---

[4]Plaintiff's Post-Hearing Memorandum of Law in Support of Motion for Preliminary Injunction ("Plaintiff's Post-Hearing Memorandum") at 7.

[5]Complaint ¶ 10.

[6]*Id.*

[7]Plaintiff's Post-Hearing Memorandum at 2.

[8]Complaint ¶ 9.

[9]*Id.* Exs. A, B.

[10]Complaint, Ex. C.

provides:

> 1.   I will not, during my employment or anytime
> thereafter, make available or divulge to any person,
> firm, corporation or other entity any information of or
> regarding Pro Staff or any of Pro Staff's affiliates,
> specifically including, but not limited to, trade
> secrets, customer lists, business policies, financial
> information, methods of operation, marketing programs,
> customer price lists or any other confidential or secret
> information concerning the business and affairs of Pro
> Staff or any of its affiliates.

(Complaint, Exs. A, B, C.)

Each agreement also contains a clause preventing the retention

of documents or records:

> Upon termination of my employment for any reason, I shall
> deliver to Pro Staff all customer lists, customer account
> records, training and operations material and memoranda,
> personnel records, code books, pricing information,
> financial information concerning or relating to the
> business, accounts, customers, employees and affairs of
> Pro Staff, together with any similar material whether or
> not of a secret or confidential nature, and ALL copies of
> any of the foregoing which are in any way related to Pro
> Staff's business an which I have in my possession or
> which are subject to my control.

(*Id.* (emphasis in original).)

The agreements of Morrow and Graves also contain a non-compete

clause, providing:

> 2.   During the term of my employment with Pro Staff, and
> for a period of one (1) year thereafter, I will not: (a)
> within a twenty-five (25) mile radius of any Pro Staff
> location or office in which I have worked or any Pro
> Staff location of office for which I have responsibility
> (whether currently in existence or opened during my

employment) own, manage, operate or control, or participate in the ownership, management, operation or control of, or be employed by, or act as a consultant or advisor to or be connected in any manner with, any corporation, person, firm or other entity that is engaged in any business that is then conducted by Pro Staff; or (b) solicit customers, or the business of any person, firm[,] corporation or other entity that shall have been a customer or account of the location of Pro Staff at which I was principally employed or any customer or account of Pro Staff or any of Pro Staff's affiliates who I actually solicited at any time during my employment, for the purpose of selling to such customer or account any product or service which shall have been sold by Pro Staff or any of Pro Staff's affiliates at any time during my employment with Pro Staff; or (c) induce or attempt to induce any employee of or consultant to Pro Staff to do any of the foregoing or to discontinue such person's association with Pro Staff.

(*Id.*, Exs. A, B.)

The agreement of Pitts differs from those of Morrow and Graves, in that it contains a non-solicitation agreement rather than a non-compete clause:

2. During the term of my employment with Pro Staff, and for a period of one (1) year thereafter, I will not solicit customers, or the business of any person, firm, corporation or other entity who shall have been a customer or account of Pro Staff or any of Pro Staff's affiliates and who I actually solicited at any time during my employment with Pro Staff, for the purpose of selling to such customer or account any product or service which shall have been sold by Pro Staff or nay of Pro Staff's affiliates at any time during my employment with Pro Staff.

(*Id.*, Ex. C.)

6

The employment contracts of Morrow and Graves contain a choice-of-law clause specifying that each "Agreement shall be governed by and be construed ... in accordance with the laws of the State of Alabama." (*Id.*, Exs. A at ¶ 10, and B at ¶ 10.) Pitts' employment contract, on the other hand, states that his "Agreement shall be governed by and be construed ... in accordance with the laws of the State of Illinois." (*Id.*, Ex. C at ¶ 10.)

All three contracts contain a stipulation of irreparable harm and consent to injunctive relief if the employee should violate his or her respective agreement:

> 3.   If I violate this Agreement, Pro Staff will suffer irreparable harm for which there is no adequate remedy at law, and I therefore consent to the issuance of any injunction or other equitable relief in favor of Pro Staff enjoining any violation of this Agreement....

(*Id.*, Exs. A, B, C.)

Defendant ITAC Solutions, L.L.C., was formed on March 2, 2000, and its office is located at 412 Cahaba Valley Circle, Pelham, Alabama.[11] Its Registered agent is Stephen Young, 412 Cahaba Valley Circle, Pelham, Alabama.[12] This address is within twenty-five miles of Pro Staff's Birmingham office. Pitts and Morrow were involved in the formation of ITAC. They began meeting with John Shank, a

---

[11]Complaint ¶ 5.

[12]*Id.*

7

shareholder in a local accounting firm, and Stephen Young, the owner of a competing staffing firm, to discuss forming a staffing company to focus on accounting and information technology during November of 1999.[13]  Pitts and Morrow each originally owned a 5% interest in ITAC, but Morrow has since relinquished his interest. (*Id.* at 3, 16.)  Both Pitts and Morrow now sell accounting and information technology staffing services for ITAC, and Graves works for ITAC as an independent contractor, conducting applicant candidate interviews from her home.  (*Id.* at  3, 8, 11.)  ITAC's business is conducted from its office in Pelham, Alabama, and from an office in Morrow's home, both of which are located withing a twenty-five mile radius of Pro Staff.

After defendants Morrow, Pitts, and Graves left Pro Staff, James Michael Stockard, Jr. ("Stockard"), Pro Staff's General Manager, received an anonymous letter suggesting that he look into the activities of the recruiting firm known as ITAC Solutions.[14] Pro Staff investigated the tip and discovered that Morrow and Pitts were running ITAC.[15]  On June 16, 2000, Stockard contacted ProSoft

---

[13]*Id.* at 3.

[14]Complaint ¶ 25; Complaint, Ex. D.  The letter states: "You may want to look into the company itac solutions [sic] - in the old Just For Feet Headquarters in the Cahaba Valley location.  Might be interested at [sic] the two people running this new IT and Accounting Recruiting Firm."  (Complaint, Ex. D.)

[15]Complaint ¶ 26.

Automation, one of ITAC's clients who was working with Pitts, and asked to speak with Morrow or Pitts.  The ProSoft receptionist told Stockard that he should call them on their cellular telephones, because ITAC did not yet have land-line telephone service.[16]  The receptionist also told Stockard that Graves was working with ITAC.[17]

Defendants Morrow, Pitts, and Graves each reside within twenty-five miles of the Pro Staff office at which they worked. Graves interviews applicant clients for ITAC at her home, and much of ITAC's business is conducted from an office in Morrow's home. The cellular telephone records of Pitts and Morrow establish that they made numerous calls to present and former customers of Pro Staff.[18]  Morrow also has made calls to Pro Staff's clients from his home telephone.[19]

## II. DISCUSSION

### A.    Subject Matter Jurisdiction

This court has jurisdiction over an action under 42 U.S.C. §

---

[16]*Id.* ¶ 28.

[17]*Id.*

[18]Pitts has called:  Altec; Motion Industries; Birmingham Peterbilt; CSC Healthcare Group; Nelson Brothers; the University of Alabama; ADP Dealer Services; the Colonnade Group; Southpace Properties; South Trust Bank; Community Newspaper Holdings, Inc.; Protective Life; and Scanoptics.  (Plaintiff's Post-Hearing Memorandum at 3-7.)   Morrow has called: Macess Corporation; Motion Industries; Lab South; Altec Industries; Altec Capital; Vesta Insurance; Protective Life; South Trust Bank; CSC Healthcare; Scan Optics; and Health South. (*Id.* at 9-11.)

[19]Morrow has called:  Lab South; Hoar Construction; Nelson Brothers; Altec Capital; Altec Worldwide; and CNHI.  (*Id.* at 9-11.)

9

1332, if the citizenship of the plaintiff is diverse from that of all defendants, and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." The amount in controversy is determined by the good faith pleading of the plaintiff. "It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938). Plaintiff has in good faith alleged money damages exceeding $75,000.[20] Because there is no "legal certainty" that plaintiff cannot recover that amount, this court may properly exercise jurisdiction.

**B.    Standards for Preliminary Injunction**

To justify the entry of a preliminary injunction, plaintiff must satisfy four prerequisites:  (1) demonstrate a substantial likelihood of ultimately prevailing on the merits; (2) show it will suffer irreparable harm if an injunction maintaining the status quo *pendente lite* does not issue; (3) prove that the threatened injury to plaintiff outweighs whatever damage the proposed injunction may cause the opposing parties; and (4) demonstrate that the injunction will not be adverse to the public interest. *E.g.*, *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *Northeastern*

---

[20]Complaint ¶ 91.

*Florida Chapter of the Association of General Contractors of America v. City of Jacksonville, Florida*, 896 F.2d 1283, 1284 (11th Cir. 1990).   *See generally* 11A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2948, at 131-33 (2d ed. 1995). Each of these factors is discussed in the following sections.

### 1.   Likelihood of Success on the Merits

A party seeking preliminary injunctive relief must first demonstrate the likelihood of success on the merits.   The requirement that a movant demonstrate a substantial likelihood of ultimately prevailing on the merits does not mean that the movant must show that it is certain to succeed on the merits.   *See Johnson v. United States Department of Agriculture*, 734 F.2d 774, 782 (11th Cir. 1984); 11A Wright, Miller & Kane, *supra* § 2948.3, at 188 & n.5.   Rather, the movant simply must show a "likelihood" of success, because of the rationale underlying both temporary restraining orders and preliminary injunctions:

> The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.   Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits.   A party thus is not required to prove his case in full at a preliminary-injunction hearing, ... and the findings of fact and

11

conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits.

*University of Texas v. Camenisch*, 451 U.S. 390, 394, 101 S.Ct. 1830, 1833, 68 L.Ed.2d 175 (1981).   Here, plaintiff has demonstrated a substantial likelihood of prevailing on the merits of its claims against Morrow and Graves, but not on the merits of its claims against Pitts.   The agreements of Morrow and Graves are to be construed under Alabama law, which is significantly more receptive to covenants restricting employment than is Illinois law.

>       a.   **Claims against Morrow and Graves under Alabama Law**

The Alabama Supreme Court has held that a covenant not to compete is enforceable if four conditions are met:  1) the employer has a protectable interest; 2) the restriction is reasonably related to that interest; 3) the restriction is reasonable in time and place; and 4) the restriction imposes no undue hardship.  *See, e.g., Ex parte Caribe, U.S.A., Inc.*, 702 So. 2d 1234 (Ala. 1997); *James S. Kemper & Co. v. Cox & Associates, Inc.*, 434 So. 2d 1380 (Ala. 1983).   Because plaintiff has produced substantial evidence that it can satisfy each prong of this test, the court finds that plaintiff is substantially likely to succeed on the merits of its claims against Morrow and Graves.

An employer has a protectable interest when it possesses "a

12

substantial right in its business sufficiently unique to warrant the type of protection contemplated by [a] noncompetetion agreement." *James S. Kemper & Co.*, 434 So. 2d at 1384 (quoting *DeVoe v. Cheatham*, 413 So. 2d 1141, 1142 (Ala. 1982)). "[I]f an employee is in a position to gain confidential information, access to secret lists, or to develop a close relationship with clients, the employer may have a protectable interest." *Id.* (citing *DeVoe*, 413 So. 2d at 1143). An employer may also have a protectable interest in "techniques and strategies." *Central Bancshares of the South, Inc. v. Puckett*, 584 So. 2d 829, 831 (Ala. 1991). In the present case, Morrow and Graves had access to customer information and candidate information. They were in a position to develop relationships with company clients and candidate clients. Both had access to plaintiff's sales techniques and strategies. Because Alabama law has recognized these interests as worthy of protection, this court finds that plaintiff had a protectable interest.

This court also finds that the restrictions placed on Morrow and Graves are reasonably related to plaintiff's protectable interest. The Alabama Supreme Court has held that when "the employment sought to be restrained is essentially the same job the employee previously performed ... the limitation is not

unreasonable." *Id.* (quoting *Cullman Boradcasting Co. v. Bosley*, 373 So. 2d 830, 835 (Ala. 1979)).  Similarly, the court does not find the limitations in the contracts of Morrow and Graves to be unreasonable.  These limitations seek only to restrain them from performing the same duties they performed while in plaintiff's employ, such as selling staffing services and recruiting staffing candidates.

The restrictions against Morrow and Graves are also reasonable in geographic and temporal scope.  The agreements signed by Morrow and Graves restrict them from being employed within a twenty-five mile radius of the Pro Staff office in which they worked. Furthermore, the contract only restricts them for one year.  The Alabama Supreme Court has upheld employment agreements that are more restrictive than these.  *See Ex parte Caribe*, 702 So. 2d 1234 (Ala. 1997) (upholding  three-year restriction on competing in the break bulk cargo liner service business); *Central Bancshares of the South v. Puckett*, 584 So. 2d 829 (Ala. 1991) (enforcing two-year non-compete in the banking business); *James S. Kemper & Co. v. Cox & Assoc.*, 434 So. 2d 1380 (Ala. 1983) (enforcing statewide restriction for two-year period).

Finally, the restrictions on employment must not impose undue

hardship on the defendants.  Defendants argue that an injunction will force Morrow and Graves to move, quit their jobs, or go into a different field.[21]  This argument is unpersuasive.  Defendants Morrow and Graves have transferable management skills. Furthermore, they are free to compete in the same business as Pro Staff outside of the twenty-five mile restricted area.  After only one year, Morrow and Graves will be free from all employment restrictions, and may even compete in the Birmingham area.

### b.   Claims against Pitts under Illinois Law

The contract drafted by Pro Staff and signed by Pitts specifies that it will be governed by Illinois law.  Restrictive covenants are enforceable under the law of that State if "the terms of the agreement are reasonable and necessary to protect a legitimate business interest of the employer."  *Office Mates 5, North Shore, Inc. v. Hazen*, 599 N.E.2d 1072, 1080 (Ill. App. 1991). There are two situations in which an employer may have a legitimate business interest justifying enforcement of a covenant not to compete:

> 1)    where the customer relationships are near-permanent and but for the employee's association with the employer the employee would not have had contact with the customers; and

---

[21]Defendant's Brief in Opposition of Preliminary Injunction at 18.

> 2)   where the former employee acquired trade secrets or
> other confidential information through his employment and
> subsequently tried to use it for his own benefit.

*Lawrence and Allen, Inc. v. Cambridge Human Resource Group*, 685

N.E.2d 434, 443 (Ill. App. 1997).  Illinois courts have applied two

different tests to determine whether customer relationships are

"near-permanent."  One test looks to seven factors:

> 1) the number of years required to develop the clientele;
> 2) the amount of money invested to acquire clients; 3)
> the degree of difficulty acquiring clients; 4) the extent
> of personal customer contact by the employee; 5) the
> extent of the employer's knowledge of its clients; 6) the
> duration of the customer's association with the employer;
> and  7)  the  continuity  of  the  employer-customer
> relationships.

*Agrimerica, Inc. v. Mathes*, 557 N.E.2d 357, 363 (Ill. App. 1990).

The other test looks to the "nature of the business involved."

Under  this  analysis  Illinois  courts  have  held  that  "a  near

permanent relationship with clients is inherent in the provision of

professional services."  *Lawrence and Allen, Inc.*, 685 N.E.2d at

444.   On  the  other  hand,  "a  near-permanent  relationship  with

customers  is  generally  absent  from  businesses  engaged  in  sales."

*Id.*  Plaintiff  has  not  established  that  it  has  "near-permanent"

relationship  with  its  customers  under  either  test.   This  is  a

highly  competitive  business.   Plaintiff  acquires  customers

according to standard sales techniques such as cold calling.  Many

16

of their potential customers are identified through newspaper advertisements and the telephone directory.  Many company clients are willing to use, and do use, multiple staffing agencies. Plaintiff has not submitted evidence that any company client has agreed to deal exclusively with Pro Staff.  These relationships cannot be accurately described as "near permanent."

Alternatively, Illinois law will uphold an employment restriction when an employee has acquired confidential information or trade secrets.  "In Illinois, customer lists and other customer information will be deemed a protectable trade secret only where the information has been developed by the employer over a number of years at great expense and kept under tight security."  *Office Mates 5,* 599 N.E.2d at 1084.  Plaintiff has demonstrated that it keeps company client and applicant client information under tight security.  All information is entered into the "Pro Search" database and employees are afforded access to it only upon a "need to know basis."[22]  Security alone is not sufficient under Illinois law, however.  The information also must be of a confidential nature.

> [T]he same type of information is not protectable where
> ... it was generally available to other employees and

---

[22]Memorandum of Law in Support of Plaintiff's Motion for Preliminary Injunction at 2.

> known by persons in the trade, could be easily duplicated
> by reference to telephone directories, or industry
> publication ,and where the customers on such lists did
> business with more than one company or otherwise changed
> businesses frequently so that their identities were known
> to the employer's competitors.

*Id.* Plaintiff has not convinced the court that the information it
collects is the type of information recognized under Illinois law
as confidential. The source of such information is readily
available to others in the industry. Much of it comes from cold
calls, newspaper advertisements, and the telephone directory. This
can hardly be considered confidential.

Plaintiffs rely on *Outsource International, Inc. v. Barton*,
192 F.3d 662 (7th Cir. 1999), in which the Seventh Circuit upheld
a similar agreement. The District Court in *Outsource* enforced a
non-compete and confidentiality agreement between a staffing agency
and a former employer after finding: 1) the agency had a near-
permanent relationship with its customers; and 2) the employee had
used the agency's confidential information for his own benefit in
starting up his business. *Id.* The employee in *Outsource* was the
employer's exclusive staffing agent in the area. *Id.* at 665. The
employer demonstrated "strong customer loyalty" and distinguished
itself through "an elaborate employee screening and customer
service system." *Id.* at 668. Plaintiff has not established,

however, that it has a near-permanent relationship with its customers.  Even if it is true that Pitts would not have had a customer relationship with company clients without plaintiff, this does not substantiate near-permanency.  Furthermore, plaintiff has not convinced the court that their customer information is confidential in nature.

The controlling case here is *Lawrence and Allen*.  The Illinois Appellate Court found that a corporate employee outplacement firm lacked a near-permanent relationship with its clients when the industry was highly competitive and did not "engender customer loyalty [by providing] a unique product or personal service, and customers utilize many suppliers simultaneously to meet their needs."  *Lawrence and Allen*, 685 N.E.2d at 143.

Because plaintiff has established neither a near-permanent relationship with its customers nor the existence of confidential information, the agreement signed by Pitts is not enforceable under Illinois law.  Therefore, the court finds that plaintiff is not likely to succeed on the merits of its claim against Pitts.

### 2.   Irreparable Harm

Once the likelihood of success on the merits is established, the party seeking a preliminary injunction must demonstrate imminent, irreparable harm.  Some cases have described a showing of

"irreparable harm" as "the *sine qua non* of injunctive relief."

*Northeastern Florida Chapter*, 896 F.2d at 1285 (quoting *Frejlach v.*

*Butler*, 573 F.2d 1026, 1027 (8th Cir. 1978)).

> The injury must be neither remote nor speculative, but
> actual and imminent. ... An injury is "irreparable" only
> if it cannot be undone through monetary remedies.   The
> key word in this consideration is irreparable.    Mere
> injuries, however substantial, in terms of money, time
> and energy necessarily expended in the absence of a stay
> are   not   enough.     The   possibility   that   adequate
> compensatory or other corrective relief will be available
> at a later date, in the ordinary course of litigation,
> weighs heavily against a claim of irreparable harm....

*Northeastern Florida Chapter*, 896 F.2d at 1285 (citations and

internal quotation marks omitted).

Plaintiff  argues  that  it  stands  to  lose  customers  and

goodwill.   The Eleventh Circuit has held that the loss of business

goodwill and customer relationships can cause irreparable harm for

which there is no adequate remedy at law.   *Ferrero v. Associated*

*Materials Inc.*, 923 F.2d 1441 (11th Cir. 1991).   The employee in

*Ferrero* was  a  successful  salesman  of  building  products  who  had

signed an employment agreement including a covenant not to compete.

*Id*. at 1443.   The products he sold were not unique, but his former

employer, Associated Materials, distinguished itself by encouraging

the sales force to develop significant customer relationships.   The

employer provided the employee with an expense account that allowed

him to entertain the customers with trips abroad, meals, tickets to sporting events, and various other forms of entertainment.   *Id.* After developing these close customer relationships and learning about the industry at the expense of his employer, the employee left the employer to start his own business.   *Id.*   The Eleventh Circuit upheld the district court's issuance of a preliminary injunction, noting:

> The district court found that should Ferrero be permitted to compete against Associated Materials, Associated materials will lose its investment in good will and will lose its long-time customers.   The district court concluded that this injury is "difficult, if not impossible, to determine monetarily."   The former Fifth Circuit held that the loss of customers and goodwill is an "irreparable" injury.

*Id.* at 1449 (citations omitted).   Other courts also have found that injury from loss of goodwill and loss of customers is irreparable. *See, e.g., Digitel Corp. v. Deltacom, Inc.*, 953 F. Supp. 1486 (M.D. Ala. 1996); *J.E. Hanger, Inc. v. Scussel*, 937 F. Supp. 1546 (M.D. Ala. 1996); *Affiliated Paper Companies, Inc. v. Hughes*, 667 F. Supp. 1436 (M.D. Ala. 1987).

Here, Plaintiff is in danger of losing customers and goodwill. Plaintiff encouraged defendants to develop relationships with clients.   Plaintiff nurtured these relationships by providing

21

defendants with expense accounts.[23]   While at Pro Staff, Morrow learned whom to contact and how to assess a company client's needs. Graves developed relationships with applicant clients who may seek placement through ITAC instead of Pro Staff.   ITAC has placed at least one of Pro Staff's applicant clients with one of Pro Staff's company clients.[24]   Furthermore, Morrow and Graves were on notice that plaintiff would suffer irreparable injury if they worked for a competitor in the staffing business, because they stipulated to it in their employment agreement.

### 3.   Balancing the Harm

If a party establishes the likelihood of success on the merits and imminent, irreparable harm, the court must weigh the harm that will occur to the moving party, absent preliminary injunctive relief, against the harm an injunction will inflict upon the enjoined party.   The focus at this stage of analysis is on the harm that may occur between the issuance of a preliminary injunction and a final hearing on the merits.   *See United States v. Lambert*, 695 F.2d 536, 539 (11th Cir. 1983).   Plaintiffs have established that they are likely to lose customers and goodwill.   Both Morrow and Graves are in the position to exploit the relationships they

---

[23]Plaintiff's Post-Hearing Memorandum at 14.

[24]Jon B. Stevens was placed at ADP in June, 2000.   (Complaint ¶¶ 35 & 36.)

22

developed with company clients and applicant clients while they were at Pro Staff.  The employment agreements signed by Morrow and Graves are limited in geographic and temporal scope.  Both Morrow and Graves are free to compete with Plaintiff outside of a twenty-five mile radius of plaintiff's Birmingham area office. Furthermore, the managerial and sales skills they developed while at Pro Staff  are easily applied to industries other than the staffing industry.

### 4.   Injunction is not Adverse to the Public Interest

Further, the injunction against Morrow and Graves is not averse to the public interest.  The public has an interest in promoting fair competition and in upholding reasonable contracts that were entered into freely.

## C.   Equitable defenses

### 1.   Unclean Hands

Defendants argue plaintiff is not entitled to equitable relief because its hands are "unclean".  The Alabama Supreme Court has recognized that "one who seek[s] equity must do equity and one that comes into equity must come with clean hands." *J. & M Bail Bonding Co. v. Hayes*, 748 So. 2d 198, 199 (Ala. 1999) (internal quotation marks and citation omitted).  The unclean hands doctrine does not apply to this situation, however, because:

23

> [i]n order for the principle of 'clean hands' to be
> available and applied by the court, the unconscionable
> conduct on the part of the complainant must in some
> manner be related or connected with the controversy in
> which the defendant is a party or is involved.

*J. T. Daniel v. Haggins*, 240 So. 2d 660, 661 (Ala. 1970).   To
support their assertion, defendants offered evidence that the
plaintiff, acting through Michael Stockard and others, has
systematically violated restrictive covenants in its hiring
practices.   Defendants have not alleged any inequitable conduct on
the part of plaintiff with regard to the defendants' employment
contracts, however.   Whatever restrictive covenants the plaintiff
may have violated in the past with other employees are irrelevant
to this case.

### 2.   Equitable Estoppel

Defendants also contend that the doctrine of equitable
estoppel precludes plaintiff from obtaining equitable relief.
There are three elements necessary to support an equitable estoppel
under Alabama law:   1) "[t]he actor, who usually must have
knowledge of the true facts, communicates something in a misleading
way, either by words, conduct or silence"; 2) "[t]he other relies
upon that communication"; and 3) "the other would be harmed
materially if the actor is later permitted to assert any claim
inconsistent with his earlier conduct." *Pierce v. Hand, Arendall,*

*Bedsole, Greaves, & Johnston*, 678 So. 2d 765 (Ala. 1996). Here, defendants presented evidence that Stockard, Pro Staff's General Manager, routinely opined that restrictive covenants are not enforceable in Alabama. Defendants may have relied on these representations, but such reliance was not reasonable. Mr. Stockard is not a lawyer, and does not hold himself out as an expert on restrictive covenants.

### III. CONCLUSION

The court finds that plaintiff's motion for preliminary injunctive relief is due to be granted in part and denied in part. Defendants Morrow and Graves are due to be enjoined, but not Pitts, because the court finds plaintiff is not likely to succeed on the merits of its claims under Illinois law. An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this the *22nd* day of September, 2000.

_____
United States District Judge

25